UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
CHRISTOPHER SLAVIN,

             Petitioner,                 <u>MEMORANDUM & ORDER</u>
                                               05-CV-0870 (JS)
        -against-

DALE ARTUS, Warden
Clinton Correction Facility,

             Respondent.
--------------------------------X
APPEARANCES:
For Petitioner:      Robert J. Del Col, Esq.
                     34 Dewey Street
                     Huntington, New York 11743

For Respondent:      Michael Herman Blakey, Esq.
                     Suffolk Country Assistant District Attorney
                     Criminal Court Building
                     200 Center Drive
                     Riverhead, NY 11901

SEYBERT, District Judge

      Petitioner Christopher Slavin ("Petitioner" or "Slavin")
seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For
the reasons stated below, Slavin's petition is DENIED.

<u>BACKGROUND</u>

      At approximately 6:30 a.m. on September 17, 2000,
Petitioner and Ryan Wagner ("Wagner") picked up a "day laborer",
under the guise of providing work, by a 7-Eleven convenience store
in Farmingville, New York. The worker led Petitioner and his
accomplice to his home in Farmingville, where he asked his
roommates, Israel Pérez Arvizu ("Pérez") and Magdaleno Estrada
Escamilla ("Estrada") if they wanted to work. After both responded
affirmatively, Petitioner and Wagner drove Pérez and Estrada to an

abandoned building in an industrial park in Suffolk County, New York.  During the drive, Petitioner asked the two men whether they were Mexican.

When they arrived, Petitioner and Wagner directed Pérez and Estrada to clean the basement of an abandoned building.  A few moments later, Petitioner and his accomplice brutally attacked the two day laborers; Petitioner hit Estrada in the back of his head with a metal post-hole digger and Wagner stabbed Pérez with a folding knife.

As Petitioner continued to beat Estrada, Pérez attempted to escape, but slipped while running.  While Pérez was on the ground, Petitioner attempted to hit him with a post-hole digger; however, Petitioner was not successful and the digger only scraped Pérez's head.  Eventually, the two victims managed to escape onto the Long Island Expressway.  A passing motorist called 911 after noticing the two victims covered in blood and standing in the way of traffic.

A subsequent police investigation quickly led to Petitioner and Wagner.  Petitioner ultimately surrendered to authorities at the Suffolk County District Attorney's office on November 2, 2000.  During his arrest, law enforcement officials directed Petitioner, over his objections, to submit to being photographed without his shirt on; the photographs were later used to obtain a grand jury indictment.  The photographs revealed

numerous tattoos on Petitioner's body, including one of an American flag over a Nazi swastika and another depicting a caricature of a Jewish man kneeling down with his hand raised at the approach of a skinhead with a sinister, clown-like visage, holding an ax. Other tattoos included the Nazi "SS" symbol,[1] two lightening bolts, a skinhead holding a club and restraining a pit bull, a skinhead holding a flaming torch as he walks on human skeletal remains, a tank crushing human skulls, a Viking ship, and two Viking figures. Petitioner bore a tattoo on the back of his neck stating, "A.C.A.B.", an acronym for "All Cops are Bastards." On his right upper arm, the letters "F.T.W." ("Fuck The World") were tattooed in red, and the letters "N.Y.H.C." ("New York Hard Core" or "New York Hate Corps.") were tattooed in black.

Petitioner later moved to dismiss his indictment on the grounds that his Fourth, Fifth, and Sixth Amendment rights were violated when the grand jury was shown photographs of Petitioner's numerous tattoos. The trial court denied Petitioner's motion, and additionally granted the prosecution's motion to take a second set of photographs pursuant to New York Criminal Procedure Law § 240.40, which grants a trial court discretion to order a Petitioner to "provide non-testimonial evidence," including, among other

---

[1] The "SS" symbol is a known abbreviation for the Schutzstaffel, the major military organization created by Adolf Hitler during the Nazi regime in Germany. See United States v. Geiser, 527 F.3d 288, 290 (3d Cir. 2008).

things, requiring a defendant to "[p]ose for photographs not involving reenactment of an event." The second set of photographs were introduced during Petitioner's trial through a friend who testified that the photographs depicted tattoos that he had observed on Petitioner's body prior to the attack. During the trial, the prosecution presented an expert who testified as to the customary meaning of the various pictures and symbols tattooed on Petitioner's body. However, the trial court directed the expert not to testify about Petitioner's thoughts or beliefs during the attack or whether the Petitioner ascribed to the viewpoints depicted by the tattoos.

On October 4, 2001, Petitioner was sentenced to 25-years imprisonment after a jury convicted him of two counts of Attempted Murder in the Second Degree, one count of Assault in the First Degree, one count of Assault in the Second Degree, and two counts of Aggravated Harassment in the Second Degree. On November 18, 2002, the New York Appellate Division, Second Department affirmed the trial court's judgment of conviction. See People v. Slavin, 749 N.Y.S.2d 738 (2d Dept. 2002). On June 11, 2003, Chief Judge Judith Kaye granted leave to appeal to the New York State Court of Appeals, and on February 17, 2004 the New York Court of Appeals upheld the Appellate Division's ruling. See People v. Slavin, 1 N.Y. 3d 392, 807 N.E.2d 259, 775 N.Y.S.2d 210 (2004). The majority opinion rejected Petitioner's argument that his constitutional

rights were violated by compelled self-incrimination. However, two judges dissented, in part, finding that there was an error, but that it was harmless beyond a reasonable doubt. On February 15, 2005, Petitioner filed the instant petition.

<u>DISCUSSION</u>

I. <u>Federal Habeas Review of State Convictions</u>

Petitioner filed this action after April 24, 1996, the effective date of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, AEDPA's provisions apply to his case. <u>Williams v. Taylor</u>, 529 U.S. 362, 402, 120 S. Ct. 1479, 1518, 146 L. Ed. 2d 389 (2000). Under the provisions of 28 U.S.C. § 2254(d), a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This deferential review is applied as long as the "federal claim has been 'adjudicated on the merits' by the state court." <u>Cotto v. Herbert</u>, 331 F.3d 217, 231 (2d Cir. 2003). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." <u>Norde v. Keane</u>, 294 F.3d

401, 410 (2d Cir. 2002) (internal citations and quotations omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (internal citations and quotations omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (internal quotations and citations omitted). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Penry, 532 U.S. at 792. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams, 529 U.S. at 411.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

As a result, Petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." Id. This is "particularly important when reviewing the trial court's assessment of witness credibility." Cotto, 331 F.3d at 233 (internal citations and quotations omitted).

II. Petitioner's Fifth Amendment Rights were not Violated

Petitioner argues that the photographs of his tattoos, presented to the jury for the purposes of demonstrating that he was a white supremacist, violated his Fifth Amendment rights. He alleges that the trial court "ordered" him to "provide communicative evidence" that was "offered for its communicative and testimonial value . . .," in violation of the Constitution. (Pet.'s Mem. L. 15.) The Court disagrees.

The self incrimination clause of the Fifth Amendment reads: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. AMEND. V. This privilege against self incrimination bars the government from "compelling 'communications' or 'testimony' . . . ." Schmerber v. California, 384 U.S. 757, 764, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); see also Fisher v. United States, 425 U.S. 391, 397, 96 S. Ct. 1569, 48 L. Ed. 2d 39 ("the Fifth Amendment is limited to prohibiting the use of 'physical or moral compulsion' exerted on the person asserting the privilege." (citations omitted)); United States v. Nobles, 4222 U.S. 225, 233 n.7, 95 S. Ct. 2160, 45 L. Ed.

2d 141 (1975) (the Fifth Amendment protects against "compelled self-incrimination, not . . . [the disclosure of] private information."). On the other hand, "compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate [the privilege]." Schmerber, 384 U.S. at 764. Thus, "[t]o qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 189, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004). And the determination of "whether a compelled communication is testimonial for purposes of applying the Fifth Amendment often depends on the facts and circumstances of the particular case." Doe v. United States, 487 U.S. 201, 215, 108 S. Ct. 2341, 101 L. Ed. 2d 184 (1988).

It is a "settled proposition that a person may be required to produce specific documents even thought they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." United States v. Hubbell, 530 U.S. 27, 35-36, 120 S. Ct. 2037, 147 L. Ed. 2d 24 (2000). But "the act of producing documents in response to a subpoena may have a compelled testimonial aspect." Id. at 36 (emphasis supplied). This is because by producing the documents themselves, the witness "communicate[s] information about the existence, custody, and authenticity of the documents." Id. at 37 (citations omitted).

Where the existence and location of the evidence is a foregone conclusion, however, nothing is added by conceding that the evidence exists, and producing the evidence does not violate the Fifth Amendment. Fisher, 425 U.S. at 411; In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992, 1 F.3d 87, 93 (2d Cir. 1993) ("Production may not be refused '[i]f the government can demonstrate with reasonable particularity that it knows of the existence and location of subpoenaed documents.'" (quoting In re Grand Jury Subpoena Duces Tecum, 616 F. Supp. 1159, 1161 (E.D.N.Y. 1985)).

The Supreme Court has never held that the Fifth Amendment prevents the "otherwise proper acquisition or use of evidence which, in the Court's view, did not involve compelled testimonial self-incrimination of some sort." Fisher, 425 U.S. at 399. Documents voluntarily prepared cannot be said to contain compelled testimonial evidence. See United States v. Doe, 465 U.S. 605, 611-12, 104 S. Ct. 1237, 79 L. Ed. 2d 552 (1984) ("Respondent does not contend that he prepared the documents involuntarily or that the subpoena would force him to restate, repeat, or affirm the truth of their contents. The fact that the records are in respondent's possession is irrelevant to the determination of whether the creation of the records was compelled. We therefore hold that the contents of those records are not privileged"); Fisher, 425 U.S. at 409-10 ("the preparation of all of the papers sought in these cases

was wholly voluntary, and they cannot be said to contain compelled testimonial evidence . . . .").

The Court agrees with the New York Court of Appeals that Petitioner's Fifth Amendment rights were not violated. No government actor compelled Petitioner to obtain his tattoos -- they were voluntarily received.[2] And, as the New York Court of Appeals stated, Petitioner "was not at any time compelled to 'restate, repeat, or affirm the truth of the[] contents of the tattoos.'" People v. Slavin, 1 N.Y.3d 392, 399, 807 N.E.2d 259 (2004). While the tattoos may be testimonial and incriminating, the lack of any compulsion renders them outside of the privilege.

Petitioner further argues that by photographing his tattoos, Respondent "created" evidence. (Pet.'s Mem. L. 26.) The Court disagrees. Petitioner created the evidence when he voluntarily had the images tattooed on his body. Respondent merely chose the method by which to present those images to the jury. And by presenting the tattoos through photographs, as opposed to having Petitioner remove his clothing and display the tattoos, Respondent may have actually blunted their impact. See, e.g., People v. Herr, 203 A.D.2d 927, 928 (4th Dept. 1994), aff'd, 86 N.Y.2d 638, 658 N.E.2d 1032, 635 N.Y.S.2d 159 (1995) ("Defendant also contends that Supreme Court erred in granting the prosecutor's request for

_____

[2] In his brief to the New York Appellate Division, Petitioner admits that his tattoos were received years before the attack. (Def.'s App. Div. Br., 22.)

10

defendant to display his tattoos because there existed the less prejudicial alternative of using photographs.").

Other district courts have held that, while tattoos may have communicative and testimonial elements, they are not compelled--and thus do not violate the Fifth Amendment. See, e.g., U.S. ex rel. Bomkamp v. McCann, No. 06-CV-4473, 2007 WL 2156675, at *5 (N.D. Ill. 2007) ("It was a reasonable application of Supreme Court precedents to hold that photographs of existing tattoos are the production of previously existing communications, not a communicative act in itself."); U.S. ex rel. Martinez v. McCann, No. 06-CV-6590, 2007 WL 914309, at *8 (N.D. Ill. 2007) ("We agree that defendants' tattoos, unlike other physical characteristics, are 'communicative' and 'testimonial.' But because the tattoos were not compelled communications, they are not entitled to the protections guaranteed under the fifth amendment."). The Court agrees with the holdings of the Cook County Circuit Court, and finds that because there was no compulsion on the part of the State, Petitioner's Fifth Amendment rights were not violated.

In any event, any error was harmless in light of the overwhelming evidence of Petitioner's guilt, as discussed further in Section VIII, supra.

III. Petitioner's Fourth Amendment Claims are Barred

Petitioner next argues that his Fourth Amendment rights were violated because the state conducted an unreasonable search by

requiring him to expose intimate parts of his body to photographs. However, in federal habeas cases, claims raising a Fourth Amendment violation are not cognizable if the petitioner had a full and fair opportunity to litigate the issue in state court. See Stone v. Powell, 428 U.S. 465, 495, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976) ("In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); Graham v. Costello, 299 F.3d 129, 133 -34 (2d Cir. 2002) ("Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court." (citations omitted)).

"A petitioner lacks a full and fair opportunity to litigate a claim only when (1) no state procedures exist by which petitioner can redress the alleged Fourth Amendment violations; or (2) such procedures do exist but petitioner was unable to take advantage of them because of certain deficiencies in the underlying state process." Rodriguez v. Portuondo, No. 01-CV-0547, 2006 U.S. Dist. LEXIS 53393, at *53 (S.D.N.Y. July 28, 2006). Here, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in state court, and thus cannot now raise these

arguments in a Section 2254 petition.  Indeed, Petitioner raised the alleged Fourth Amendment violation in his motion to dismiss his indictment, and again in his several post-verdict motions.  Thus, Petitioner's Fourth Amendment claims may not be heard on a federal habeas corpus review.

IV.  Petitioner's Sixth Amendment Rights were not Violated

Petitioner argues that his Sixth Amendment right to counsel was violated.  He alleges that, despite advising the authorities that he was represented by counsel, as soon as his counsel left his side, he was "forcibly stripped for the singular purpose of obtaining 'testimonial and communicative evidence' that was later submitted to a grand jury in lieu of a confession." (Pet.'s Mem. L. 36 (emphasis in original).)

It is well-established that "an accused is entitled to counsel at any critical stage of the prosecution."  Kirby v. Illinois, 406 U.S. 682, 690, 92 S. Ct. 1877, 1882, 32 L. Ed. 2d 411 (1972) (internal citations and quotations omitted).  Critical stages include a post-indictment lineup.  Simmons, 390 U.S. at 383. But not all use of photographs is considered a "critical stage." See Simmons, 390 U.S. at 383-84; United States v. Kon Yu-Leung, 910 F.2d 33, 39 (2d Cir. 1990) ("a pretrial photo display identification has been held not to be a critical stage." (citing United States v. Ash, 413 U.S. 300, 321, 93 S. Ct. 2568, 37 L. Ed. 2d 619 (1973))); Ash, 413 U.S. at 319 ("That adversary mechanism

remains as effective for a photographic display as for other parts of pretrial interviews.").

Petitioner's Sixth Amendment rights were not violated because the taking of photographs during Petitioner's arrest processing was not a critical stage in the proceedings. A petitioner's Sixth Amendment right to counsel is not violated when counsel is not present at a "mere preparatory step in the gathering of the prosecution's evidence, . . . such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like." United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 1932, 18 L. Ed. 2d 1149 (1967). Photographing arrested persons is a normal part of the booking procedure--one provided for in the New York statutes. The Court finds that the taking of Petitioner's photos was not a critical stage of the proceeding, and rather occurred at a routine, administrative step. See Edwards v. Butler, 882 F.2d 160, 164 (5th Cir. 1989) ("The taking of [petitioner's] photograph was not a critical stage of the proceeding."); Pugh v. Macfarland, No. 04-CV-4721, 2005 U.S. Dist. LEXIS 36406, at *12 (D.N.J. Dec. 28, 2005) ("Nor did the police violate Petitioner's Sixth Amendment right to counsel by taking his photograph").

Moreover, no incriminating statements were elicited from Petitioner, and there was a minimal risk that the absence of counsel would affect Petitioner's right to a fair trial. See,

14

e.g., <u>Gilbert v. California</u>, 388 U.S. 263, 267, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967) (holding that, among other reasons, the taking of a writing exemplar did not violate the Sixth Amendment because "there [was] minimal risk that the absence of counsel might derogate from his right to a fair trial.").

V.   <u>Petitioner was not Denied a Fair Trial</u>

Petitioner next argues that he was denied a fair trial because of various alleged errors that Petitioner maintains occrued during his trial.  The Court has reviewed Petitioner's claims and finds that they are meritless.

A.   <u>Erroneous Evidentiary Rulings</u>

Petitioner alleges several evidentiary errors.  First, he alleges that the evidence concerning his tattoos was irrelevant. (Pet.'s Mem. L. 41.)  Second, Petitioner argues that it was error to admit Louis Jordan as an expert, and that his testimony was "beyond the pale of legitimate expert testimony."  (<u>Id.</u> at 44.) Third, Slavin argues that the trial court erred in admitting testimony on his purported religious beliefs and gang membership. (<u>Id.</u> at 52-56.)  Fourth, he alleges that it was error to allow the improper bolstering of the identification testimony.  (<u>Id.</u> at 60.) Finally, Petitioner argues that the trial court improperly allowed evidence of his prior bad acts.  (<u>Id.</u> at 61.)  The Court rejects these arguments as a basis for habeas relief.

"Federal courts may issue a writ of habeas corpus based

upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right and that the error was 'so extremely unfair that its admission violates fundamental conceptions of justice.'" Summerville v. Conway, No. 07-CV-4830, 2008 WL 3165850, at *4 (E.D.N.Y. 2008) (citations omitted). Habeas petitioners "bear[] a heavy burden because evidentiary errors generally do not rise to constitutional magnitude." Id. (citations omitted). Petitioner has not met that burden here. And "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Monohar v. Crowley, No. 07-CV-4952, 2009 WL 2413640, at *6 (E.D.N.Y. 2009) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)).

With respect to Petitioner's objections to the expert testimony, the Court finds that the trial court properly admitted the expert after undertaking an extensive inquiry into the expert witness' qualifications and expertise. Additionally, contrary to Petitioner's claim, the expert did not testify as to "what Petitioner thinks and believes is [] repugnant." (Pet.'s Mem. 44.) Rather, the expert testified as to the common meaning of the symbols tattooed on Petitioner's body, and was specifically directed not to testify as to Petitioner's beliefs.

Next, Petitioner argues that the trial court improperly admitted evidence that Petitioner was a white supremacist and

adheres to the Christian Identity Movement. The Court disagrees. Evidence of Petitioner's white supremacist beliefs was relevant to Petitioner's motive. With respect to Petitioner's Christian Identity beliefs, the Court has reviewed the records and finds that there was little reference to the Christian Identity ideology, and thus no improper religious inquiry occurred during Petitioner's trial. Nor was there any improper testimony linking Petitioner to a gang, as Petitioner now contends. Moreover, even if the trial court's evidentiary rulings had been erroneous, the errors were not so crucial, critical, or highly significant as to deprive petitioner of his due process right to a fair trial. See Collins, 755 F.2d at 19.

The Court rejects Petitioner's claim that the trial court improperly allowed bolstering of a witness. The alleged "bolstering" of a prosecution witness does not rise to the level of a constitutional claim. See Fernandez v. Artus, No. 07-CV-2532, 2009 WL 1586271, at *15 (S.D.N.Y. 2009) ("It is well-settled that 'bolstering' is a state law issue that is not cognizable on federal habeas review."); Huber v. Schriver, 140 F. Supp. 2d 265, 279-80 (E.D.N.Y. 2001) (holding that the evidentiary issue of bolstering is not cognizable on federal habeas review); Ayala v. Hernandez, 712 F. Supp. 1069, 1074 (E.D.N.Y. 1989) (same).

Petitioner further argues that the trial court allowed in evidence of prior bad acts, which denied him of a fair trial.

Specifically, he argues that he was "unfairly connected to the 'KKK' and various 'street and prison gangs' . . . ." (Petr.'s Mem. L. 61. (emphasis in original).)  As a result, Petitioner argues, the inference was raised throughout the record that he possessed a criminal propensity or a prison record.  (Id.)  Petitioner's argument is unclear.  A review of the record reveals that the trial court did not improperly admit Petitioner's prior bad acts; rather, the trial court permitted testimony regarding Petitioner's White supremacist ideology and the common meaning of Petitioner's various tattoos.  This testimony did not concern a prior bad act.  In sum, the Court finds that the alleged evidentiary errors Petitioner complains of did not deprive Petitioner of a fair trial.

B. Prosecutorial Misconduct

Petitioner alleges that the prosecutor's line of questioning concerning his religion or Christian Identity constituted prosecutorial misconduct.  (Pet.'s Mem. L. 57.)  His specific allegations include that the People lacked a good faith basis in its questioning on Petitioner's religion or Christian Identity because its witness failed to qualify as an expert on the issue of Christian Identity.  (Id.)  There was no good faith, Petitioner alleges, because the prosecutor knew that the witness "did not possess a sufficient level of expertise to testify concerning Christian Identity . . . ." (Id. at 58.)  Moreover, he alleges that "this topic lacked any connection to the crimes

alleged in the indictment," and that the prosecutor elicited this testimony knowing that it lacked a proper foundation. (<u>Id.</u>) These allegations do not merit habeas relief.

The standard for reviewing a habeas claim of prosecutorial misconduct is "'the narrow one of due process, and not the broad exercise of supervisory power.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642, 94 S. Ct. 1868, 1871, 40 L. Ed. 2d 431 (1974)). A federal court must, therefore, distinguish between "'ordinary trial error of a prosecutor and that sort of egregious misconduct . . . amounting to a denial of constitutional due process.'" <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990) (quoting <u>Donnelly</u>, 416 U.S. at 647-48). Habeas relief is available only where the prosecutor's remarks so infected the trial with unfairness that the resulting conviction is a denial of due process. <u>See</u> <u>Salcedo v. Artuz</u>, 107 F. Supp. 2d 405, 416 (S.D.N.Y. 2000). Prejudice must be measured by a finding that the comments were not only improper, but "'had a substantial and injurious effect or influence in determining the jury's verdict.'" <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d Cir. 1998) (quoting <u>Bently v. Scully</u>, 41 F.3d 818, 823 (2d Cir. 1994)).

To determine whether the alleged misconduct is so significant as to amount to a denial of due process, the habeas

court must "place the[] remarks in context." <u>Darden v. Wainwright</u>, 477 U.S. 168, 179, 106 S. Ct. 2464, 2470, 91 L. Ed. 2d 144 (1986). When analyzing whether a petitioner has shown actual prejudice, the Court should consider the following relevant factors: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent prejudicial conduct." <u>Bentley</u>, 41 F.3d at 824.

Petitioner's prosecutorial misconduct arguments are without merit. As above stated, the expert witness was properly admitted, and evidence of Petitioner's White supremacist beliefs was relevant to the issue of motive. The prosecutor did not improperly inquire as to Petitioner's religious beliefs; moreover, any questioning regarding Christian Identity was harmless, because, as noted, the witnesses provided very little testimony regarding this religion. In sum, Petitioner has far from shown that the prosecutor's remarks so infected the trial with unfairness that the resulting conviction was a denial of due process..

VI. <u>Excessive Sentence</u>

Petitioner asserts that the trial court erred in imposing a 25-year prison sentence. (Pet.'s Mem. L. 46.) He complains that during his sentencing, the trial judge "went on" about the events of September 11 and discussions with his wife. (<u>Id.</u>) As a result, Petitioner argues that the imposition of the absolute maximum

sentence "was inappropriate." (Id.) Petitioner's sentence was not improper.

The Eighth Amendment only prohibits extreme sentences that are "grossly disproportionate" to the crime. Lockyer v. Andrade, 538 U.S. 63, 72-73, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); Harmelin v. Michigan, 501 U.S. 957, 995, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991). And "[i]t is firmly established that '[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.'" Summerville v. Conway, No. 07-CV-4830, 2008 WL 3165850, at *11 (E.D.N.Y. Aug. 6, 2008) (quoting White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)).

As Petitioner admits, his sentence was within the range prescribed by state law. (See Pet.'s Mem. L. 46 ("Petitioner was sentenced to the absolute maximum of twenty-five years imprisonment.").) Since his sentence was within this allowable range, no constitutional question has been presented, and habeas relief is not appropriate.

VII. Recusal

Petitioner argues that the trial judge should have recused himself because his Law Secretary was married to James Catterson—the Suffolk County District Attorney. (Pet.'s Mem. L. 47-48.) The Court has reviewed Petitioner's arguments and finds that Petitioner has not presented any argument requiring the trial

judge to <u>sua</u> <u>sponte</u> recuse himself, nor was it error for the trial judge to fail to disclose his Law Secretary's relationship with the Suffolk County District Attorney.

VIII.    <u>Sufficiency of the Evidence</u>

"The Due Process Clause of the Fourteenth Amendment prohibits conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" <u>Einaugler v. Supreme Court of the State of New York</u>, 109 F.3d 836, 840 (2d Cir. 1997) (quoting <u>In re Winship</u>, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970)). Petitioner is only "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92, 61 L. Ed. 2d 560 (1979). The evidence must be viewed "in the light most favorable to the prosecution." <u>Id.</u> at 319. When challenging the sufficiency of the evidence in a state criminal conviction, petitioner "bears a heavy burden." <u>Einaugler</u>, 109 F.3d at 840. Additionally, "the government receives the benefit of having all permissible inferences drawn in its favor." <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002) (citing <u>United States v. Martinez</u>, 54 F.3d 1040, 1042 (2d Cir. 1995)). Furthermore, the verdict can "be based entirely on circumstantial evidence." <u>Martinez</u>, 54 F.3d at 1043.

On appeal, the Appellate Division rejected Petitioner's sufficiency of the evidence argument, holding that this contention was not preserved for appellate review. <u>People v. Slavin</u>, 299 A.D.2d 499 (N.Y. App. Div. 2d Dep't 2002). The state court went on to hold that "[i]n any event, viewing the evidence in the light most favorable to the prosecution . . . , we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." <u>Id.</u> (Internal citations omitted).

"A federal court may not review a state prisoner's federal claims if the claims were denied in state court pursuant to an independent and adequate state procedural rule." <u>Escalona v. Sears</u>, No. 06-CV-6769, 2008 U.S. Dist. LEXIS 79529, at *23 (E.D.N.Y. Oct. 8, 2008); <u>see also</u> <u>Whaley v. Graham</u>, No. 06-CV-3843, 2008 U.S. Dist. LEXIS 82987, at *21 (E.D.N.Y. Oct. 15, 2008) (holding that the petitioner's claims were procedurally barred from federal habeas review because "in disposing of petitioner's claims, the Appellate Division provided a plain statement that the two claims in this petition were unpreserved for appellate review under established New York law."). The state court's "reliance on state law must be 'clear from the face of the opinion.'" <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).

Here, the state court held that Petitioner's

insufficiency of the evidence claim was unpreserved for appellate review. People v. Corea, 808 N.Y.S.2d 719, 720 (N.Y. App. Div. 2d Dep't 2006). Although the state court went on to state, "[i]n any event," Petitioner's arguments were without merit, this alternative holding does not open the door for federal court review. "[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005); see also Cherry v. Walsh, No. 09-CV-1452, 2009 U.S. Dist. LEXIS 75373, at *28 (E.D.N.Y. Aug. 25, 2009) ("A state court's holding that a claim is unpreserved and without merit constitutes reliance on an independent state law ground.").

Because the Appellate Court rested its decision on an adequate and independent state ground, the Court cannot review Petitioner's claim "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 749-750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); see also Fama, 235 F.3d at 809. Petitioner fails to satisfy either of the two Coleman standards.

In any event, Petitioner's claim is utterly without merit. There was more than sufficient evidence to support Petitioner's conviction, including the victims' testimony,

testimony regarding Petitioner's racist beliefs, and the fact that Petitioner turned himself in.  Given the considerable evidence that supports Petitioner's guilt, Petitioner fails to meet the demanding standard for overturning the jury's verdict.  Thus, Petitioner's claim for insufficiency of the evidence is without merit.

IX.  A Certificate of Appealability is Denied

To obtain a Certificate of Appealability, Petitioner must a demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003) (internal quotation marks and citations omitted).  The Court finds that reasonable jurists would not debate any of the issues presented in this habeas petition with the exception of Petitioner's claim that his Fifth Amendment rights were violated by the introduction of photographs of Petitioner's tattoos during Petitioner's criminal trial.  Thus, the Court GRANTS a Certificate of Appealability solely on the issue of whether Petitioner's Fifth Amendment right against self-incrimination was violated.

CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's writ of habeas corpus in its entirety.  The Court GRANTS a certificate of appealability solely on the issue of whether the trial court infringed Petitioner's Fifth Amendment

right against self-incrimination.  The Clerk of the Court is directed to mark this matter as closed.

                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:      January 8, 2010
            Central Islip, New York